**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Britney R.,<br><br>     Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>     Defendant. | Civil No. 3:23-CV-00692-MPS<br><br><br><br>July 9, 2024 |

### <u>RECOMMENDED RULING ON PENDING MOTIONS</u>

The plaintiff, Britney R.,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for child insurance and Supplemental Security Income benefits. (Compl., ECF No. 1.) She has moved the Court for an order reversing and or remanding the decision of the Commissioner. (ECF No. 14 at 1.) The Commissioner asks the Court to affirm, arguing that the Administrative Law Judge's ("ALJ") findings were "supported by substantial evidence and made by a correct application of legal principles." (ECF No. 18 at 1.)

The plaintiff asserts two principal claims of error. First, she claims that the ALJ erred at Step Three of the five-step disability evaluation process when he failed to explain his finding that her limitations did not meet or medically equal one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart B, Appendix 1. (ECF No. 14-1 at 9-15.) Second, she says that the ALJ erred in his treatment of the opinion evidence in the record. (*Id*. at 15-20.)

---

[1] Pursuant to the Court's January 8, 2021 Standing Order, the plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

Having carefully reviewed the parties' papers and the entire, 1,708-page administrative record, I agree with the plaintiff on her first claim. The ALJ found that the plaintiff suffered from the severe impairment of anxiety disorder (R. 19), a finding that obliged him to consider Listing 12.06 at Step Three. That listing is satisfied when the claimant meets the so-called "Paragraph A" criteria, and either the "Paragraph B" or the "Paragraph C" criteria. In deciding whether these standards have been met, the ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment[.]" *Berry v. Schweicker*, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam). Here, the ALJ provided a sufficient rationale with respect to Paragraph B, but his discussion of Paragraph C consisted of only a single, conclusory sentence: "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (R. 20.) His written decision thus leaves the reader unclear about the basis for his Paragraph C finding, or even whether he applied the correct legal standards in reaching it. (*See* discussion, Section III.A *infra.*) I therefore recommend that the plaintiff's motion be granted, the Commissioner's motion be denied, and the case be remanded for further administrative proceedings.

The Plaintiff's second argument is significantly underdeveloped. (*See* discussion, Section III.B *infra.*) I therefore do not recommend that it be accepted as an additional or alternate basis for remand. If my recommendation on the Plaintiff's first claim is adopted, however, the ALJ should consider the arguments raised in the second claim on remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff is a now twenty-three year old woman who filed for Supplemental Security Income benefits on September 3, 2018. (R. 79.) She initially cited a learning disability and anxiety as the basis for her claim (*id.*), but ultimately, she would receive specific diagnoses of "intellectual disability, specific learning disability, social anxiety disorder, anxiety disorder, [and] generalized

anxiety disorder." (R. 19.)  She alleged that she had been disabled since June 18, 2000, the day she was born. (R. 78-79.)

The Social Security Administration ("SSA") denied the Plaintiff's claim at the initial level on March 15, 2019. (R. 78-92.)  The Plaintiff requested reconsideration (R. 124-26), and the SSA denied her claim yet again on August 13, 2019. (R. 93-109.)  She then requested a hearing before an ALJ (R. 136-38), and the SSA scheduled her hearing for April 23, 2020. (R. 154.)  In the meantime, however, the SSA closed its offices on account of the COVID-19 pandemic. Soc. Sec. Admin., *Coronavirus (COVID-19): Important Information about Social Security Services,* https://blog.ssa.gov/coronavirus-covid-19-important-information-about-social-security-services/ (last visited July 6, 2024) (stating that the SSA was "closed to the public for in-person service starting Tuesday, March 17, 2020").  The Plaintiff declined to appear by video (R. 237), and presumably for this reason, her hearing did not go forward until July 12, 2022. (R. 39-73.)

At the hearing, the Plaintiff testified first.  She explained that she had obtained a high school diploma and was taking courses at Tunxis Community College. (R. 45.)  She initially said that she was not working, but then she added that she had done some paid volunteer work through the Futures School. (R. 45-46.)  The ALJ then asked her why she felt she could not work, and she responded, "I don't know." (R. 46.)  He then asked her whether she thought she *could* work, and she answered, "Yeah." (*Id.*)  She added that she hoped to get a job in an office after she graduated from Tunxis. (R. 47.)

The Plaintiff's mother testified next.  She reported that the Plaintiff had received special education services "[f]or her whole life" due to delayed developmental milestones. (R. 61.)  She stated that the Plaintiff had an IQ of 68 and was then "receiving . . . treatment for her anxiety." (R.

62.)  Although the Plaintiff herself had testified that she spent time with friends and participated in activities with them, her mother testified that her ability to do so was "limited."  (R. 63.)

Finally, the ALJ heard testimony from a vocational expert ("VE") named Kenneth Smith. (R. 67-73.)  The ALJ asked VE Smith whether a person with no exertional limitations, but who could only "perform simple routine tasks and could recall and execute short uninvolved instruction," could perform any jobs that are available in the national economy.  (R. 68.)  The VE testified that such a person could find work as a housekeeping cleaner, a "silver wrapper," and a marker.  (R. 68-69.)  The ALJ then changed the hypothetical, asking the VE to consider a person who "requires special supervision to complete simple routine tasks 15 percent of the time during each 40-hour work week" (R. 71) – an evident reference to the "job coach" issue that will be discussed below.   VE Smith testified that there were no jobs available for such a person in the national economy "on a competitive employment basis."  (*Id.*)

After considering the evidence, the ALJ found the Plaintiff to be "not disabled" in a seventeen-page opinion dated August 12, 2022.  (R. 18.) As will be further explained below, ALJs are required to follow a five-step sequential evaluation process in deciding disability claims, and ALJ John Aletta's decision followed that format.  At Step One, he concluded that "[t]he claimant has not engaged in substantial gainful activity since June 18, 2000, the alleged [disability] onset date."  (*Id.*)  At Step Two, he held that "[t]he claimant has the following severe impairments: intellectual disability, specific learning disability, social anxiety disorder, anxiety disorder, [and] generalized anxiety disorder."  (R. 19.)  He considered the Plaintiff's physical impairments of cutaneous mastocytosis and left eye exotropia, but he determined that they were non-severe.  (*Id.*)

At Step Three, the ALJ considered whether the Plaintiff's impairments met or medically equaled the severity of two Listings – Listing 12.06, which concerns "anxiety and obsessive-

compulsive disorders," and Listing 12.11, which concerns "neurodevelopmental disorders." (R. 19-21.) He allowed that the Plaintiff had a "marked" limitation in the fourth of the so-called "Paragraph B" criteria, "adapting or managing oneself," because "[t]he record shows that [she] can become very anxious, in particular at new sites, and tends to shut down with [*sic*] dealing with anxiety producing situations." (R. 20.) But he also found that the Plaintiff had only "moderate" limitations in the other three Paragraph B areas of mental functioning. (R. 19-20.) He therefore concluded that, "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (R. 20.)

The section in which the ALJ specifically discussed Paragraph C is composed of only two terse sentences. (R. 20.) In the first, he stated that he had "considered whether the 'paragraph C' criteria are satisfied. (*Id.*) In the second, he stated that "[i]n this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (*Id.*)

After concluding that the Plaintiff's impairments did not meet or medically equal the severity of any Listing, the ALJ made findings about her residual functional capacity, or "RFC." He found "that the claimant has the residual functional capacity to perform a full range of work at all exertional levels," if she observe some "nonexertional limitations." (R. 21.) Specifically, he limited the Plaintiff to "simple, routine tasks" with "short, uninvolved instructions." (*Id.*) He added that she "cannot work with the general public," and could tolerate occasional interaction with co-workers, so long as that interaction did not require "close collaboration[.]" (*Id.*) Finally, he concluded that the Plaintiff "must work in a structured, stable work environment having no more than incidental, minor changes in her work setting or work procedures." (*Id.*)

In reaching his conclusions about the Plaintiff's RFC, the ALJ considered opinion evidence from twelve different sources. (R. 27-30.) He found the opinions of three non-examining state

agency consultants to be "persuasive" because they were "supported" by the record.  (R. 27.)  He also reviewed a report from Dr. Margaret Kardos, an educational consultant who had opined that the Plaintiff would "initially require a job coach" if she were to enter the workforce.  (R. 28-29, 1348.) The ALJ found Dr. Kardos's opinion to be persuasive "in part," but he did not state which part persuaded him; he said only that the "opined need for a job coach initially is not supported[,]" is "vague as to time needed or type of job[,]" and "is contrary to the author's observation of the claimant working well at" a retail job that the Futures School had arranged for her.  (R. 28-29.) The ALJ also reviewed a report from a social worker named Ann Rodriguez, who had likewise opined on the need for a "1:1 job coach at the start of employment." (R. 30, 1675.)  He concluded that LCSW Rodriguez's report was "not persuasive" because "[t]he opined limitations are not supported by treatment notes or by the mental status examinations of the claimant in the record." (R. 30.)  Finally, the ALJ discounted other treating source opinions on the ground that the limitations observed by the sources were "contrary to [the Plaintiff's] ability to successfully attend community college . . . and obtain a driver's license."  (R. 29.)

At Step Four of the five-step process, the ALJ observed that the Plaintiff "has no past relevant work."  (R. 30.)At Step Five, he relied on VE Smith's testimony to conclude that a person with the Plaintiff's RFC could perform the jobs of "housekeeping cleaner-light," "silver wrapper-light," and "marker-light."  (R. 31.)  He also relied on VE Smith's testimony in concluding that 307,000 such jobs exist in the national economy.  (*Id.*)  Taking all five steps together, the ALJ held that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from June 18, 2000 through" August 12, 2022.  (R. 32.)

After receiving the ALJ's decision, the Plaintiff's parents sent a letter to the SSA.  They explained that while the Plaintiff had indeed obtained a driver's license, "she still does not drive

on the highway because of her fear and anxiety." (R. 75.)  They added that while the Plaintiff had done some work outside the home, she "relied on a job coach and parental support for these purposes." (*Id.*)  A month later, the Plaintiff's then-attorney appealed the ALJ's decision to the Appeals Council. (R. 759.)  In the accompanying letter, the attorney alleged among other things that "the ALJ gave insufficient weight to the claimant's use of a job coach to assist her in a workplace environment." (R. 759.)

The Appeals Council denied review (R. 1), and the Plaintiff filed suit in this Court. (Compl., ECF No. 1.)  The Commissioner answered the complaint by filing the administrative record. (ECF No. 9; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").)  Two months later, the Plaintiff filed her motion for reversal or remand (ECF No. 14), and two months after that, the Commissioner filed his motion to affirm. (ECF No. 18.)  The Plaintiff did not file a reply, and neither party requested oral argument.  The motions are therefore ripe for decision.

## II.  APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v.*

*Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id*.  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the Listings. *Id*.  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any "past relevant work."  *Id*.  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience."  *Id*.  The claimant bears the burden of proving her case at Steps One through Four.  *Id*.  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner.  *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion') (citations omitted). Although the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted).  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error.  In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.  DISCUSSION

### A.    The ALJ's Step Three Determination

As noted above, the plaintiff makes two principal claims of legal error, the first of which is a claim that "the ALJ erred at Step 3 of the sequential process." (ECF No. 14-1 at 9.)  She asserts that "it is incumbent upon the ALJ to set for [*sic*] the rational basis for the findings made" at Step Three, and "to cite to those portions of the record that support the findings made." (*Id.* at 12) (citing *Lisa T. v. Kijakazi*, No. 3:20-cv-1764 (SVN), 2022 WL 2207613 (D. Conn. June 21, 2022)).  She argues that the ALJ failed to do so with respect to his findings on Listing 12.06. (*Id.* at 9-15.)  The Commissioner disagrees. (ECF No. 18-1 at 4-8.)

Listing 12.06 concerns anxiety and obsessive-compulsive disorders, and it is composed of three parts – "Paragraph A," "Paragraph B," and "Paragraph C."  20 C.F.R. Part 404, Subpart P,

App'x 1, § 12.06.  To qualify as disabled under this Listing, a "plaintiff must . . . satisfy the requirements of paragraph A and paragraph B OR paragraph A and paragraph C."  *Dayle B. v. Saul*, No. 3:20-cv-00359 (TOF), 2021 WL 1660702, at *13 (D. Conn. Apr. 28, 2021) (emphasis in original).  Indeed, a plaintiff must meet *all* the requirements of Paragraph A, and *all* the requirements of Paragraph B or *all* the requirements of Paragraph C, because "a claimant must demonstrate that [s]he suffers from all of the listed criteria, no matter how severe any one particular element of the listing may be."  *Kujtim M. v. Kijakazi*, No. 3:21-cv-00205 (TOF), 2022 WL 2965621, at *4 (D. Conn. July 27, 2022) (quoting *Scully v. Berryhill*, 282 F. Supp. 3d 628, 636 (S.D.N.Y. 2017)).  Put differently, "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Paragraph A of Listing 12.06 requires "[m]edical documentation" of an anxiety disorder, panic disorder, or obsessive-compulsive disorder.  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.06A.  Where, as here, the disability claim is premised on an anxiety disorder, Paragraph A further requires that the plaintiff's disorder be "characterized by <u>three</u> or more of" six conditions. *Id.*  The six are "a. Restlessness; b. Easily fatigued; c. Difficulty concentrating; d. Irritability; e. Muscle tension; or f. Sleep disturbance."  *Id.*

Paragraph B of Listing 12.06 requires an "[e]xtreme limitation of one, or marked limitation of two," of four listed "areas of mental functioning."  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.06B; *see also Dayle B. v. Saul*, No. 3:20-cv-00359 (TOF), 2021 WL 1660702, at *13 (D. Conn. Apr. 28, 2021).  The four areas are "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself."  *Sheila Renee H. v. Kijakazi*, No. 3:21-cv-00944 (TOF), 2022 WL 4181723, at *9 (D. Conn. Sept. 13, 2022) (citing 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.06B).  A finding of

"extreme" limitation "means the claimant is 'not able to function in this area independently, appropriately, effectively, and on a sustained basis.'" *Stonick v. Saul*, No. 3:19-cv-01334 (TOF), 2020 WL 6129339, at *11 n.8 (D. Conn. Oct. 19, 2020) (citing 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00F2). A finding of "marked" limitation "means the claimant's 'functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.'" *Id.* at *11 n.9 (citing 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00F2).

Neither Paragraph A nor Paragraph B is at issue in this appeal. With respect to Paragraph A, the ALJ failed to discuss it at all, choosing instead to skip right to Paragraph B. (R. 19-20.) Courts generally regard this as a concession that the Paragraph A criteria have been satisfied, *see, e.g., Mariano v. Soc. Sec. Admin.*, No. 3:08-cv-01738 (JCH), 2010 WL 1286888, at *9 (D. Conn. Mar. 30, 2010) (holding that a failure to discuss Paragraph A "is a legal error, but it is one made in favor of Mariano, as it assumes that Mariano has met the criteria of Paragraph A"), but in any event, the Commissioner has not asked the Court to affirm the ALJ's decision on the ground that the Paragraph A criteria have not been met. (*See* ECF No. 18-1 at 4-8.) With respect to Paragraph B, the ALJ found that the plaintiff had a "marked limitation" in "adapting and managing oneself," but only moderate limitations in the other three domains. (R. 19-20.) After a two-page discussion, he concluded that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (*Id.*) The plaintiff has not challenged this finding on appeal, nor has she challenged the sufficiency of the ALJ's discussion. (*See* ECF No. 14-1 at 9-15.) Thus, for purposes of this appeal both parties effectively concede that Paragraph A is satisfied but Paragraph B is not. (*See id.*; *see also* ECF No. 18-1 at 4-8.) The issue, therefore, is whether Paragraph C is satisfied – or, more to the point, whether the ALJ adequately explained his Paragraph C findings.

To meet the requirements of Paragraph C, a plaintiff bears the burden to show three things. First, she must show that her "mental disorder . . . is 'serious and persistent,' that is, [she] ha[s] a medically documented history of the existence of the disorder over a period of at least 2 years." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.06C.  Second, she must come forward with evidence of "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs or [her] mental disorder." *Id.*  Third, she must produce evidence of "[m]arginal adjustment," defined as "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.*  A companion regulation adds that the SSA will consider a claimant to have shown only marginal adjustment "when the evidence shows that changes or increased demands have led to exacerbation of [her] symptoms and signs and to deterioration in [her] functioning; for example, [she has] become unable to function outside of [her] home or a more restrictive setting, without substantial psychosocial supports[.]"  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00G2.

Here, the ALJ stated that he "considered whether the 'paragraph C' criteria are satisfied," but his discussion of that consideration was only a single sentence long.  He wrote that "[i]n this case, the evidence fails to establish the presence of the 'paragraph C' criteria."  (R. 20.)  He did not state whether the plaintiff failed to establish the first Paragraph C criterion of a "serious and persistent" disorder, the second criterion of "ongoing" "[m]edical treatment" that "diminishes the symptoms and signs" of the disorder, or the third criterion of "marginal adjustment."

The plaintiff argues that the ALJ committed reversible error when he disposed of Paragraph C in such a cursory way.  (ECF No. 14-1, at 11-12.)  She contends that "a district court 'must remand where the ALJ's decision was not thoroughly explained in a manner that allows the court to be comfortable that it was supported by substantial evidence.'"  (*Id.* at 15) (quoting *Simon v.*

*Comm'r of Soc. Sec.*, No. 20-cv-127 (KAM), 2020 WL 6488427, at *6 (E.D.N.Y. Nov. 4, 2020)). She adds that a reviewing court must be able to "comprehend the 'logical bridge from the evidence' to the ALJ's conclusion" (*id.*) (quoting *Tami B. v. Kijakazi*, No. 3:21-cv-1460 (JCH), 2023 WL 2403898, at *8 (D. Conn. Mar. 7, 2023)), and she argues that this "logical bridge" is lacking when an ALJ disposes of a multi-factored Listing element in a single sentence. (*Id.* at 12-13) (citing *Sprankles v. Saul*, No. 1:18-cv-415 (JD), 2020 WL 967897 (N.D. Ind. Feb. 27, 2020)). She says that this is particularly true when "there [is] evidence in the record to suggest that the 'C' criteria could be satisfied," and in a long footnote, she directs the Court's attention to dozens of allegedly supportive pieces of evidence. (*Id.* at 13 & n.15.)

The Commissioner does not dispute that the ALJ's Paragraph C discussion was conclusory, but he argues that this "is not, alone, a sufficient reason for remand." (ECF No. 18-1, at 6) (citing *Berry*, 675 F.2d at 468). He acknowledges that "an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment[.]'" (*Id.*) (quoting *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (summary order)). But he says that, even if the ALJ fails in this duty, courts can and should excuse the failure when they are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." (*Id.*) (quoting *Salmini*, 371 F. App'x at 112). He then cites dozens of pieces of evidence that, in his view, provide substantial evidentiary support for the proposition that the Plaintiff did not meet the Paragraph C criteria. (*Id.* at 6-8.)

Although both parties cite the factual record extensively, their dispute is essentially a legal one. They disagree about who must show what when an ALJ disposes of Paragraph C in a single sentence. It is well established that there can be substantial evidence on both sides of the same issue. *See, e.g., DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998). Here, the

13

Case 3:23-cv-00692-MPS    Document 19    Filed 07/09/24    Page 14 of 25

Commissioner says that the ALJ's disposition of Paragraph C must be affirmed if, on appeal, he can point to substantial evidentiary support for his side of the argument. (ECF No. 18-1, at 6.)  So far as his brief discloses, he does not think it matters if a claimant can also point to substantial evidence on her side.  (*See id.* at 4-8.)  By contrast, the Plaintiff evidently believes that an ALJ's failure to articulate his Paragraph C rationale constitutes reversible error if she can cite substantial evidentiary support for her position, even if the Commissioner can do likewise.  (*See* ECF No. 14-1, at 12-15.)

There is some tension in the Second Circuit case law on this point.  On the one hand, *Berry* and *Salmini* suggest that an ALJ's failure to explain himself should be excused if the Court's own review of the record confirms that there was substantial evidence on his side, seemingly without regard to the volume or substantiality of the evidence on the claimant's side.  *Berry*, 675 F.2d at 469 ("[W]e wish to note that here, in spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."); *Salmini*, 371 F. App'x at 112-13 ("Here, although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination.").  On the other hand, in *McCallum v. Commissioner of Social Security*, the Court of Appeals stated that when there is "substantial conflicting evidence in the record" on an issue, the ALJ has a duty to explain why he decided that issue against the claimant.  104 F.3d 353 (2d Cir. 1996).  In that case the court affirmed a judgment in favor of the Commissioner, but only because "virtually no evidence contradict[ed]" the ALJ's decision.  *Id.*  If there had been "either no evidence or

substantial conflicting evidence," the ALJ would have been obliged to "make specific factual

findings in order to facilitate meaningful judicial review." *Id.*; *cf. also Aregano v. Astrue*, 882 F.

Supp. 2d 306, 320 (N.D.N.Y. 2012) (noting the seeming tension between *Berry* and *McCallum*).

The single-sentence statement used by the ALJ in this case appears to be something of a

stock sentence for the SSA,[2] and district courts have therefore encountered it with some frequency.

---

[2]     There are at least nineteen cases in the Second Circuit alone in which an ALJ held that "the
evidence fails to establish the presence of the paragraph C criteria" without any meaningful
additional discussion. *Arch v. Comm'r of Soc. Sec.,* No. 22-CV-8826 (VF), 2024 WL 964600, at
*7 (S.D.N.Y. Mar. 6, 2024); *Petranella P. v. Comm'r of Soc. Sec.,* No. 6:21-cv-6172 (EAW), 2023
WL 2154768, at *4 (W.D.N.Y. Feb. 22, 2023); *Duran v. Comm'r of Soc. Sec.,* 618 F. Supp. 3d 94,
100 (E.D.N.Y. 2022); *Douglas J. v. Comm'r of Soc. Sec.,* No. 1:20-CV-699 (LJV), 2022 WL
976894, at *5 (W.D.N.Y. Mar. 31, 2022); *Rosario v. Kijakazi,* No. 20-CV-05490 (JPC) (BCM),
2022 WL 875925, at *12 (S.D.N.Y. Mar. 15, 2022), *report and recommendation adopted,* No. 20-
CV-05490 (JPC), 2022 WL 976879 (S.D.N.Y. Mar. 31, 2022); *Douglas v. Saul*, No. 20-CV-0322
(PED), 2021 WL 2852962, at *6 (S.D.N.Y. July 8, 2021); *Rivera v. Comm'r of the Soc. Sec.
Admin.,* No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *18 (S.D.N.Y. Dec. 30, 2020),
*report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.,* No. 19-CV-
4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *Arndt v. Comm'r of Soc. Sec.,* No. 19-
CV-3174 (NSR) (PED), 2020 WL 7029462, at *6 (S.D.N.Y. Aug. 31, 2020), *report and
recommendation adopted,* No. 19-CV-3174 (NSR), 2020 WL 6130625 (S.D.N.Y. Oct. 16, 2020);
*Burchette v. Comm'r of Soc. Sec.,* No. 19-CV-5402 (PED), 2020 WL 5658878, at *7 (S.D.N.Y.
Sept. 23, 2020); *Ballard v. Comm'r of Soc. Sec.,* No. 19-CV-673 (PED), 2020 WL 1031908, at
*13 (S.D.N.Y. Mar. 2, 2020); *Nicole F. v. Saul,* No. 8:18-CV-760 (DJS), 2019 WL 4736216, at
*4 (N.D.N.Y. Sept. 27, 2019); *Pantoja Santiago v. Comm'r of Soc. Sec.,* No. 18-CV-1226 (KPF)
(BCM), 2019 WL 6831533, at *11 n.14 (S.D.N.Y. July 23, 2019), *report and recommendation
adopted,* No. 18-CV-1226 (KPF), 2019 WL 3798055 (S.D.N.Y. Aug. 13, 2019); *Marcano v.
Berryhill,* No. 17-CV-4442 (KMK) (PED), 2018 WL 5619749, at *8 (S.D.N.Y. July 13, 2018);
*Hansen v. Berryhill,* No. 16-CV-7272 (ER) (GWG), 2018 WL 910501, at *3 (S.D.N.Y. Feb. 15,
2018), *report and recommendation adopted,* No. 16-CV-7272 (ER), 2018 WL 1281806 (S.D.N.Y.
Mar. 5, 2018); *Artinian v. Berryhill,* No. 16-CV-4404 (ADS), 2018 WL 401186, at *5 (E.D.N.Y.
Jan. 12, 2018); *Burke v. Comm'r of Soc. Sec.,* No. 16-CV-6520 (KMK) (PED), 2017 WL 9534749,
at *15 (S.D.N.Y. Aug. 21, 2017), *report and recommendation adopted,* No. 16-CV-6520 (KMK),
2017 WL 6029166 (S.D.N.Y. Dec. 5, 2017); *Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207,
212 (S.D.N.Y. 2017); *Crowley v. Colvin,* No. 13-CV-1723 (AJN) (RLE), 2014 WL 4631886, at
*13 (S.D.N.Y. Mar. 24, 2014), *report and recommendation adopted in part, rejected in part,* No.
13-CV-1723 (AJN), 2014 WL 4631888 (S.D.N.Y. Sept. 15, 2014); *Bohn v. Comm'r of Soc. Sec.,*
No. 7:10-CV-1078 (TJM) (DEP), 2012 WL 1048607, at *8 (N.D.N.Y. Mar. 5, 2012), *report and
recommendation adopted,* No. 7:10-CV-1078 (TJM), 2012 WL 1048867 (N.D.N.Y. Mar. 28,
2012).

Several courts have followed the *McCallum* principle and held this statement to be insufficient when there is substantial evidence on both sides. In *Petranella P. v. Commissioner of Social Security*, for example, the ALJ claimed to have "considered whether the 'paragraph C' criteria [were] satisfied," but his explanation was limited to a single sentence: "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria, as supported by the testimony of" a medical expert. No. 6:21-cv-6172 (EAW), 2023 WL 2154768, at *4 (W.D.N.Y. Feb. 22, 2023). The Commissioner urged the district court to affirm this holding, "point[ing] to evidence in the record regarding Plaintiff's activities of daily living and her mental status findings and contend[ing] that they reflect that Plaintiff was able to adjust to changes in her environment." *Id.* at *5. But the court reviewed the claimant's contrary evidence and, after concluding that it was likewise substantial, ordered the case remanded. *Id.* at *6. Citing *McCallum*, the court observed that "[a]n ALJ's failure to explain his reasoning for finding that a plaintiff did not meet the paragraph C criteria can be grounds for remand where the record contains 'either no evidence or substantial conflicting evidence' as to whether the criteria are satisfied." *Id.* at 4 (quoting *McCallum*, 104 F.3d at 353 and *Sagman v. Comm'r of Soc. Sec.*, No. 20-Civ.-4257 (CS) (JCM), 2021 WL 5831114, at *15 (S.D.N.Y. Dec. 8, 2021)). Although the ALJ had discussed some of the competing evidence, his "failure to engage in a meaningful discussion of why he concluded this evidence did not satisfy these Listings was error." *Id.* at *5 (citing *Flake v. Comm'r of Soc. Sec.*, No. 7:15-CV-1128 (GTS) (WBC), 2016 WL 7017355, at *6 (N.D.N.Y. Nov. 10, 2016)). And the error was "not harmless because there was evidence in the record seemingly conflicting with the ALJ's conclusion, and the ALJ's reasoning to conclude otherwise cannot be gleaned from the decision." *Id.* at *6.

The *Sagman* court reached a similar result under similar circumstances.  In that case, the ALJ went beyond the stock one-sentence formulation and identified some facts that supported his Paragraph C conclusion.  2021 WL 5831114, at *15 ("The ALJ reasoned that while Plaintiff lived in 'supported living since 2001,' he had 'good earnings' from 2001-2015, 'which shows that the "supported" living environment did not translate to an inability to work.'").  Nevertheless, the record contained "conflicting evidence regarding Plaintiff's satisfaction of the paragraph C criteria," and it was "not clear whether the ALJ considered other evidence that is relevant both to the level of psychosocial support and mental health therapy Plaintiff received, as well as to whether he was able to achieve only marginal adjustment."  *Id.* at *16.  Citing *McCallum*, the court noted that a Social Security case is properly remanded for further proceedings when there is substantial evidence on both sides and the ALJ fails to explain how he analyzed it.  *Id.* at *15 (citing *McCallum*, 104 F.3d 353 ).  "If such an evidentiary issue exists, the ALJ must 'set forth the crucial factors' in his or her decision 'with sufficient specificity' to enable the federal court to determine whether the decision is supported by substantial evidence."  *Id.* (quoting *Aregano*, 882 F. Supp. 2d at 320).  "Even if the ALJ's determination has potential support in the record, the Court should remand the case 'if there is a reasonable basis for doubting whether' the ALJ applied the appropriate legal standards."  *Id.* (quoting *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 175 (N.D.N.Y. 2010)) (brackets omitted).

Even in cases that did not cite *McCallum*, the district courts have generally remanded when the ALJ disposes of Paragraph C in a single, conclusory sentence.  In *Rosario*, for example, the ALJ "considered whether plaintiff met the 'paragraph C' criteria for Listings 12.04, 12.06, and 12.15, and quickly concluded (without further discussion of the record) that 'the evidence fails to establish the presence of the "paragraph C" criteria.'"  2022 WL 875925, at *12.  The court ordered

the case remanded, in part because "it is impossible to conclude from the present record that the ALJ conducted a meaningful analysis" of Paragraph C. *Id.* at *18 (quotation marks omitted). In *Rivera*, the ALJ likewise "found, with no analysis, that the evidence 'fails to establish the presence of the "paragraph C" criteria.'" 2020 WL 8167136, at *18. The court remanded that case too, directing the ALJ to "reevaluate the Paragraph C criteria and provide a substantive explanation for his conclusion." *Id.* at *19 n.18. And in *Bohn*, the ALJ similarly "dismissed the requirements of paragraph (C) . . . in a single sentence, tersely concluding that 'the evidence fails to establish the presence of the "paragraph C" criteria.'" 2012 WL 1048607, at *8. The court ordered that case remanded as well, in part because "the ALJ offered no meaningful analysis in his decision whatsoever regarding" Paragraph C. *Id.*. at *10. "This was error and alone requires reversal and a remand of the matter to the agency for further consideration." *Id.*; *see also Nicole F.*, 2019 WL 4736216, at *4 (holding that an ALJ's single-sentence statement that "the evidence fails to establish the presence of the paragraph C criteria" was reversible error; "[t]he fact that the ALJ neither identified the paragraph C criteria nor specifically addressed when he concluded that [the] Plaintiff did not meet the criteria warrants remand for further explanation") (citation and quotation marks omitted); *accord Aregano*, 882 F. Supp. 2d at 320 (remanding when consideration of Paragraph C criteria was not sufficiently detailed to permit review).

The cases cited by the Commissioner are not to the contrary. While the *Berry* court did affirm an ALJ's poorly explained decision upon identifying substantial evidence that supported it, it also noted that "[c]ases may arise . . . in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record[.]" 675 F.2d at 469. In such cases, courts should "not hesitate to remand the case for further findings or a clearer explanation for the decision." *Id.*; *see also Salmini*, 371 F. App'x at 113 (affirming ALJ's decision because "this is not a case in which we

would be unable to fathom the ALJ's rationale") (citation and quotation marks omitted).  Indeed, in *Berry* the Second Circuit expressly warned the SSA "in future cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Berry*, 675 F.2d at 469.  Moreover, the district court cases cited by the Commissioner are distinguishable.  In two of them, the sufficiency of the ALJ's explanation was not at issue.  *Jeffrey W. v. Berryhill*, No. 1:18-cv-115 (LEK), 2019 WL 2210593, at *7-8 (N.D.N.Y. May 22, 2019) (addressing the substantiality of the evidence on Paragraph C, not the sufficiency of the ALJ's articulation); *Mitchell v. Berryhill*, No. 16-CV-6588 (WHP) (HBP), 2018 WL 3300683, at *18 (S.D.N.Y. Feb. 2, 2018) (same).  And in the third, the claimant's position had no substantial evidentiary support.  *Ivey v. Comm'r of Soc. Sec.*, No. 1:19-cv-657 (EAW), 2020 WL 5046261, at *10 (W.D.N.Y. Aug. 27, 2020) ("Based on the ALJ's findings and the evidence of record, no reasonable fact finder could have found that Plaintiff had the marginal adjustment necessary to satisfy the paragraph (C) criteria.").

In short, the Plaintiff's case should be remanded if there is substantial evidence on both sides of the Paragraph C issue, and if the ALJ's decision sheds no meaningful light on how he resolved the conflict.  Of course, it is the ALJ – and not the district court – who gets to decide how to resolve conflicts between competing bodies of substantial evidence.  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the [ALJ].").  But the ALJ must explain his decision in sufficient detail to permit judicial review.  *Aregano*, 882 F. Supp. 2d at 320; *see also Tami B.*, 2023 WL 2403898, at *7-8.  When he does not, courts should "not hesitate to remand the case for further findings or a clearer explanation for the decision."  *Berry*, 675 F.2d at 469.

In this case, the administrative record contains substantial evidence supporting the Plaintiff's position. With respect to the first prong of Paragraph C – that is, the requirement of a "serious and persistent" mental disorder "documented . . . over a period of at least 2 years" – Dr. Mayville diagnosed the Plaintiff with social anxiety disorder on February 19, 2019, over three years before the hearing. (R. 1372-74.) With respect to the second prong – "[m]edical treatment, mental health therapy, psychosocial supports(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of . . . mental disorder" – the record discloses that the Plaintiff underwent years of treatment for her disorder, including a prescription for the anti-anxiety medication Sertraline and counseling, and that her condition responded to the treatment. (R. 1678, 1682, 1684, 1686, 1689, 1691, 1693, 1695, 1698, 1700) (medical records from May 18, 2020 to May 3, 2022 documenting Plaintiff's prescription for Sertraline, her attendance at counseling, and "improv[ement]" in her symptoms). And with respect to the third prong of "marginal adjustment," the record contains enough evidence for a reasonable mind to conclude that the Plaintiff has "minimal capacity to adapt to changes in [her] environment" and that her "adaptation to the requirements of daily life is fragile." 20 C.F.R. Part 404, Subpart P, App'x 1, §§ 12.06C, 12.00G2c. Her pediatrician characterized her disorder as "[h]igh [a]nxiety" that "prevent[ed] her from doing things [or] going places." (R. 1170.) A therapy provider stated that the Plaintiff had trouble understanding or recalling simple information without "1:1 supports and coaching to independence." (R. 1670.) A job coach explained that, when confronted with new workplace situations that required her to "ask[] questions and request[] help," the Plaintiff "tends to freeze up." (R. 1573.) A reasonable person could conclude that these and other pieces of evidence describe an individual with only "minimal capacity to adapt to changes in [her] environment."

Of course, the record also contains substantial evidence supporting the Commissioner's position on the third Paragraph C criterion. The Plaintiff graduated high school and successfully completed some college courses, suggesting that she can adapt to new academic environments. (R. 20.) At the Futures School, she made new friends and exhibited "tremendous growth and increased confidence about facing new challenges." (R. 20, 23, 1434.) She obtained her driver's license, and she independently performed activities of daily living such as laundry and meal preparation. (R. 20, 22.) And perhaps most significantly, the Plaintiff herself testified that she could work – only her mother testified otherwise. (R. 46-47, 63.)

If it were my place to weigh the evidence, I might well conclude that the Commissioner's evidence on "marginal adjustment" vastly outweighs the Plaintiff's. But it is not my place. *Alston*, 904 F.2d at 126 ("Where there is substantial evidence to support either position, the determination is one to be made by the [ALJ]."). Rather, it is the ALJ's job to resolve conflicts in the evidence, and to explain how he did so with sufficient clarity to facilitate meaningful judicial review. *See Veino*, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Here, the ALJ did not explain his Paragraph C conclusions at all. (R. 20.)

The Commissioner argues on appeal that, even if the ALJ did not articulate his Paragraph C findings in the section of his opinion devoted to Step Three, the basis for those findings can be found "[e]lsewhere in his decision." (ECF No. 18-1, at 6.) In his brief, he points out all the places where the ALJ cited evidence of a seemingly happy and well-adjusted claimant. (*Id.* at 6-8.) He then sums up by saying that "the ALJ cited to evidence throughout his decision that supported his finding that Plaintiff did not demonstrate marginal adjustment." (*Id.* at 8-9.)

Yet there are several problems with this argument. To begin with, the ALJ did not say "the evidence fails to establish the presence of the third 'paragraph C' criterion." Rather, he said that

"the evidence fails to establish the presence of the 'paragraph C' criteria" – plural – and the most natural reading of this statement is that the ALJ believed that *none* of the three criteria had been met, not just the third criterion of "marginal adjustment." A conclusion that the first and second criteria had not been satisfied might lack substantial evidentiary support (*see* discussion, p. 20 *supra*), but at a minimum it would need to be better explained.

Moreover, even if I were to read the ALJ as referring only to the third criterion, his opinion would still lack sufficient detail to facilitate meaningful judicial review. The Commissioner is correct that the ALJ cited multiple pieces of evidence tending to show that the Plaintiff could adjust to the demands of the workplace. (ECF No. 18-1, at 8-9.) But the Plaintiff points out that many of these adjustments were made only with the assistance of a job coach or with other supports (ECF No. 14-1, at 18 & n.17), and the ALJ's decision does not adequately address this point. His substantive discussion of the job coach issue is brief and conclusory; while critiquing an opinion that the Plaintiff required a coach, the ALJ wrote only that "[t]he opined need for a job coach initially is not supported and is vague as to time needed or type of job," and that the opinion was "contrary to the author's observation of the claimant working well at" a retail store. (R. 28-29.) But this statement omits that the Plaintiff had a job coach when she worked at the store. Whether the Plaintiff requires a job coach is a significant issue in this case, because VE Smith testified that there are no jobs available in the national economy for someone who would require "special supervision" more than fifteen percent of the time. (R. 71.)

In summary, the ALJ's decision leaves the Court unclear about his rationale for concluding that the requirements of Paragraph C were not met. Did he conclude that the Plaintiff's claim failed on the first, second, or third prong? His opinion does not say. Did he disbelieve the Plaintiff's claim to be unable to adjust to new workplace situations without a job coach? His

decision says only that an "initial[]" need for a coach was unsupported by one particular opinion, and even that statement is supported only by a counterfactual claim that the Plaintiff "work[ed] well" in a clothing store without a coach.  (R. 28-29.)

The ALJ may very well be right that the Plaintiff does not satisfy the Paragraph C criteria. As noted above, substantial evidence seems to support that view, and the Plaintiff herself testified that she could work.  (R. 46-47.)  Moreover, "[a] finding at step 3 that a claimant is per se disabled under a listed impairment is a very high bar" that is not easily satisfied.  *Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022) (summary order).  But the Plaintiff is entitled to a better explanation than the one she received.  I therefore recommend that her motion be granted, and that her case be remanded for reconsideration and further articulation of the Paragraph C criteria.

### B.     The ALJ's Treatment of the Opinion Evidence.

"When a Social Security claimant appeals the Commissioner's decision on multiple grounds, and the Court sustains one objection and orders the case remanded, it often does not address the other objections but instead simply instructs or encourages the ALJ to consider them" in his further proceedings.  *Jeffery Z. vv. Kijakazi*, No. 3:21-cv-1458 (MPS) (TOF), 2023 WL 8115041, at *10 (D. Conn. Feb. 21, 2023), *report and recommendation accepted and adopted*, slip op. (D. Conn. Mar. 9, 2023).  Nevertheless, courts sometimes comment on those other objections "to guide the ALJ's consideration on remand in the interest of avoiding future remands."  *Delgado v. Berryhill*, No. 3:17-cv-54 (JCH), 2018 WL 1316198, at *16 (D. Conn. Mar. 14, 2018).

In this case, the Plaintiff's second claim of error is a claim that "the ALJ's findings regarding the persuasiveness of the opinion evidence are not supported by substantial evidence." (ECF No. 14-1, at 15.)  She notes that the record contained opinions from six "providers who have

actually examined or worked with" her – her pediatrician Dr. Ward, her school psychologist Dr. Mayville, a "transitional planning evaluator" named Dr. Margaret Kardos, her special education teacher Kim Swanson, her job coach Danielle Baehr, and her social worker Ann Rodriguez. (ECF No. 14-1, at 17.) She does not, however, individually analyze the ALJ's treatment of these six sources. (*Id.* at 18-20.) Instead, she interprets the ALJ as having discounted the opinion evidence generally on the ground that she "obtained her drivers license, and was attending Tunxis Community College." (*Id.* at 18.)

This argument is too poorly developed to serve as an independent basis for remand. *Cf. Lewis v. Berryhill*, No. 3:16-cv-1091 (SALM), 2018 WL 1377303, at *9 n.7 (D. Conn. Mar. 19, 2018) (declining to address "perfunctory and undeveloped arguments" in a Social Security case). For one thing, the ALJ did not cite the Plaintiff's driver's license or community college studies in his analyses of the Mayville, Kardos, or Rodriguez opinions, and accordingly the Plaintiff's brief does not identify any defect in those three analyses. Moreover, the Plaintiff does not identify what sort of doctor Dr. Kardos is, and by extension she leaves the Court unable to determine the extent of the ALJ's duty of articulation.[3]

With that said, the ALJ should carefully consider on remand whether further articulation is in order. Clearly, he thought that the Mayville, Kardos, and Rodriguez opinions were undermined by the Plaintiff's successful passage of her driver's license exam and of her community college

---

[3] Dr. Kardos holds a Ph.D. degree and operates an educational consultancy, but the record does not disclose whether her Ph.D. is in psychology or in some other field. (R. 1335.) The ALJ's duty to articulate his treatment of the opinion evidence is higher with respect to medical sources like psychologists than it is with respect to non-medical sources like non-psychologist educational consultants. *Compare* 20 C.F.R. § 416.920c(c) (requiring ALJ to address, *inter alia*, the "supportability" and "consistency" of medical opinions) *with* 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a) – (c) in this section.").

courses. What is not clear, however, is whether he considered any supports that the Plaintiff required to achieve those things – and whether those supports, if truly needed in a workplace setting, would disable the Plaintiff from competitive employment or at least suggest a different RFC. Thus, if my recommendation on the Plaintiff's first claim of error is adopted and the case is remanded, I would respectfully recommend that the ALJ also carefully consider the second claim of error in his further proceedings.

## IV.    CONCLUSION

For the reasons stated above, I recommend that the Plaintiff's Motion for Order (ECF No. 14) be granted; that the Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 18) be denied; that the Commissioner's decision be vacated; and that the case be remanded for further administrative proceedings consistent with this recommended ruling, including a reevaluation of the Paragraph C criteria and a substantive explanation of the conclusions reached.

This is a recommended ruling by a Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen days of being served with this order. Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; D. Conn. L. Civ. R. 72.2; *Impala v. United States Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (stating that failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); *Small v. Sec'y of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

*/s/ Thomas O. Farrish*
_____
Hon. Thomas O. Farrish
United States Magistrate Judge